JUDSON L. THOMSON MFG. CO. v. CLARK et al.

(Circuit Court of Appeals, First Circuit. September 12, 1916.)

No. 1178.

PATENTS ☞328—INFRINGEMENT—RIVET SETTING MACHINE.
    The Maenche patent, No. 753,281, for a rivet setting machine, construed with respect to the device for preventing the tipping of short and topheavy rivets when they descend from the raceway, *held* not infringed by the device of the Coombs patent, No. 1,128,852, which accomplishes the same result, but by a different and not equivalent mechanism.

Appeal from the District Court of the United States for the District of Massachusetts; Frederic Dodge, Judge.

Suit in equity by the Judson L. Thomson Manufacturing Company against Willet M. Clark and others. Decree for defendants, and complainant appeals. Affirmed.

Daniel A. Rollins, of Boston, Mass., for appellant.

Henry N. Paul, Jr., of Philadelphia, Pa. (Emery, Booth, Janney & Varney, of New York City, on the brief), for appellees.

Before PUTNAM, Circuit Judge, and ALDRICH and BROWN, District Judges.

BROWN, District Judge. This appeal presents a question of infringement of claims 1, 2, and 5 of letters patent No. 753,281, March 1, 1904, to A. T. Maenche, for improvements in rivet setting machine. Rivets with large heads and short shanks are topheavy, and likely

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

to tip over when they descend from the raceway, and then are not properly seated to be driven by the plunger. The patentee says:

"The invention consists in a machine of the character described, of a raceway, a reciprocatory plunger, an anvil, a rivet carrier, * * *"

—and, finally, the element to which this case particularly relates:

"a stop and holder so constructed as to stop the rivet in line with the center of the anvil and plunger, and also projecting above the top of said rivet to prevent the same from tipping out of a vertical position."

The claims are as follows:

"1. In a rivet setting machine, a reciprocatory driver, an anvil, a raceway, a rivet carrier, and a rivet stop and holder located on the opposite side of said carrier from that upon which the rivets approach said carrier.

"2. In a rivet setting machine, a reciprocatory driver, an anvil, a raceway, a rivet carrier and a rivet stop and holder located on the opposite side of said carrier from that upon which the rivets approach said carrier, and constructed to project over the top of a rivet resting upon said carrier."

"5. In a rivet setting machine, a reciprocatory driver, an anvil, a raceway, a rivet carrier, and a rivet stop and holder located on the opposite side of said carrier from that upon which the rivets approach said carrier and constructed to project across the path of motion of said driver, and above the head of a rivet resting upon said rivet carrier."

What is described in the claims as a "rivet stop and holder" is referred to in the specification as an "improved stop" and as "rivet stop 40." It serves to stop, not only the lateral motion of the rivet from the raceway, but, because it projects over a portion of the top of the rivet, it stops upward vertical motion of the rivet and prevents the same from tipping at an angle. It fairly may be said that it stops both horizontal and upward vertical movement of the head of the rivet.

In the defendants' device the horizontal movement of the rivet is checked, as in devices of the prior art, by the wall of the rivet seat. The provision against upward movement of the rivet head and consequent tipping is a pin or finger freely mounted within the axis of the plunger, and hanging by its own weight to a short distance above the top of the rivet. Passing from the raceway the rivet will be clear of contact with the pin if seated in a proper position.

The defendants' device is shown in the patent No. 1,128,852, February 16, 1915, to J. W. Coombs. The specification of this patent says:

"The rivet, before coming to rest upon the seat, is subjected to jars or tremors, which tend to cause a topheavy rivet to sometimes invert, unless means are provided to prevent this. The position of the pin 11, directly over the top of the rivet, is such that the top of the rivet will come into contact with the end of this pin, before it can turn over, and the pin has sufficient weight and is so situated as to prevent such inversion of the rivet."

It is the contention of the appellant that although in the patent in suit the rivet stop consists of a single piece of metal which stops both lateral and upward vertical movement of the rivet, and although the defendants' lateral stop is that of the prior art, and although the pin is a projection in line with the center of the plunger and is attached solely to the plunger, these two parts are mechanically equiv-

alent in functions to the single part or "stop and holder" of the appellant.

It is, of course, possible that the functions of a curved stop, which stops both horizontal and vertical movement, might be performed by using a broken line, instead of a regular curve. Ives et al. v. Hamilton, Ex., 92 U. S. 426, 23 L. Ed. 494. It is, nevertheless, true that the defendants borrow nothing from the complainant, but only from the prior art, in respect to the means for stopping lateral motion. Complainant's combination as a whole, however, is characterized by the novel feature of a stop against vertical displacement which extends above the head of the rivet. It does not appear that in rivet setting machines such a stop was previously used.

But the difficulty in the present case is that if we should find the addition to the old machine of a stop overhanging the head of the rivet, and which stops tipping just as the plunger itself, if close to the seat of the rivet, might prevent tipping, to be an infringement of the claims in suit, this would be to ignore other structural features and to try the case as if the patentee had secured a broad claim for the use of a stop projecting over the top of the rivet for the purpose of preventing tipping. We have no means of knowing whether a claim of such breadth would have been allowed by the Patent Office, and certainly the question of invention would be different from that presented by a claim for a restricted combination. The claims of this patent must be construed rather as for the specific structure whereby the rivet is fed and maintained in a position for the plunger than as an embodiment of a broad inventive idea of preventing the tipping over of the rivet by interposing a stop against upward vertical movement.

We appreciate the force of the complainant's suggestion that the conception of the patentee was not only to put a stop over the head of the rivet and in the path of the driver, but to allow the driver to operate either by slotting it so that it could straddle the stop, or by providing a stop or holding device with an aperture through which the driver could descend. It is quite true that the extension of the stop over the head of the rivet required a modification of the driver or plunger, and that the defendants adopted not only the idea of a stop over the top of the rivet, but also the idea, which was incidental to it, of so modifying the plunger of the prior art as to make it avoid striking the stop in its descent. Structurally, however, the defendants' means for doing this is quite different from complainant's; and in view of such difference, and of the fact that a patent has issued to the defendants, we agree with the opinion of the District Court that the two devices are too different in function and in mode of operation to permit calling either an equivalent for the other.

The comparison of devices is stated in the complainant's brief, as follows:

"1. The patented machine stops the rivet in the rivet holder by the vertical portion of the 'stop and holder'; defendants' machine stops it by the high back wall of the rivet carrier (of the old art).

"2. The patented machine 'holds' the rivet by the horizontal part of the

'stop and holder' situated over the rivet head; defendants' machine 'holds' the rivet by the guard finger over the rivet head.

"3. In the patented machine the plunger straddles the holder portion of the 'stop and holder' in order to descend and drive a rivet; in defendants' machine the plunger, in effect, straddles the guard finger in order to descend and drive the rivet—that is, the guard pin retreats up into the plunger, which is the same thing.

"4. In both constructions the 'throat' of the rivet carrier is left clear and unobstructed for the passage of the rivet on to the rivet carrier from the raceway."

Conceding that infringement may not be avoided by substituting for a single part, which performs two functions, two parts, each of which performs one of the two functions in the same way, it yet may be said that in respect to the means for performing the function of stopping lateral motion the defendants borrow nothing from the complainant, but follow the prior art, and that they add to the old combination a new element which structurally is not an equivalent for, though it performs one of the two functions of, the complainant's stop and holder.

It may also be conceded that in the adoption of a stop partly overhanging the head of the rivet, and in the corresponding provision of means to enable the plunger to avoid contact with the stop, the defendant's device resembles in a general way the complainant's. This feature, however, is not specifically referred to in any of the claims in suit; and the projecting pin, freely mounted in the axis of the plunger, though performing a stopping function, is a mechanical solution of the idea of preventing an overhanging stop from interfering with the action of the plunger, which is substantially different from the complainant's means of combining vertical stop and plunger.

The defendants' combination of the two elements, the stop and plunger, is not shown to be a mere mechanical equivalent for the complainant's combination of these two elements, but, on the contrary, seems to involve an original solution of this problem, or at least a solution not suggested by the patent in suit.

We are therefore of the opinion that the claims of the patent in suit, and the claims of the patent to Coombs, No. 1,128,852 covering defendants' structure, are for distinct combinations, and that the defendants' device does not infringe the first, second, and fifth claims of the Maenche patent, No. 753,281, now in suit.

The decree of the District Court is affirmed, and the appellee recovers costs in both courts.